## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

             Plaintiff,

v.                                                    Case No. 25-CR-473-SEH

THOMAS LEON INGRAM,

             Defendant.

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Revoke Order of Detention [ECF No. 21]. The government responded to the motion, [ECF No. 24], and it is ripe for decision. For the reasons set forth below, the motion is denied.

## I. Background and Procedural History

Defendant Thomas Ingram is charged with one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2244(b) and one count of Sexual Abuse of a Minor in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 2243(a). [ECF No. 2]. Before Defendant's initial appearance on the related complaint, the government filed a motion for detention, asserting that the court should detain because no conditions, or combination of conditions, of release could reasonably assure Defendant's appearance as required and the safety of any other person and the community. [ECF No. 5 at 2].

On January 8, 2025, United States Magistrate Judge Christine Little held a detention hearing. [ECF No. 16]. Judge Little found that the weight of evidence against Defendant was strong, that the offense charged involved a minor victim, that he would be subject to a lengthy period of incarceration if convicted, and that Defendant's release posed a serious danger to any person or the community. [ECF No. 17 at 3]. After hearing the proffers and arguments of the parties, Judge Little determined that the government had proven by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." [*Id*.].

## A. The Government's Proffer

The government proceeded by proffer at the detention hearing. [ECF No. 23 at 3–9]. Counsel for the government proffered that Special Agent Brian Dean would testify that the 15-year-old minor victim revealed to Defendant's minor daughter that she was having sex with Defendant. [*Id*. at 3–4]. The minor victim showed Defendant's daughter Snapchat messages that she and Defendant had exchanged, and Defendant's daughter took screenshots of those messages to her mother, who in turn reported the incident to the Catoosa Police Department. [*Id*. at 4]. The FBI found additional

conversations between Defendant and the minor victim on her phone. [*Id.* at 4–5].

Law enforcement forensically interviewed the minor victim, who confirmed that that she and Defendant had sex several times. [*Id.* at 5]. The government introduced excerpts of some of the messages between the minor victim and Defendant into evidence. [*Id.* at 6]; *see also* [ECF No. 24 at 3 n.1]. In those messages, Defendant stated that he did not "want [the victim] to get pregnant" because he "was scared about that last night." [ECF No. 24-3 at 2].

After Defendant was indicted on December 15, 2025, he remained in contact with the victim. [ECF No. 23 at 6]. She was found at his home by the Catoosa Police Department on December 30, 2025, and the police cautioned Defendant against permitting the victim into his home in the future. [*Id.* at 6–7]. Nonetheless, she was found there again on January 5th, 2026. [*Id.* at 6].

Defendant was subsequently arrested at Tulsa Public Schools, where he worked for the maintenance division. [*Id.* at 7]. During a post-*Miranda* interview, Defendant stated that four girls between the ages of 16 and 18 had been coming over to his home because he was going through a hard time and they helped with his depression. [*Id.*]. He also stated that he permitted the minor victim to come to his home and stay overnight from January 4th to

January 5th despite knowing that the Catoosa Police Department had told him to stop opening the door for her. [*Id.* at 7–8].

When law enforcement confronted Defendant with the Snapchat messages between him and the minor victim, he had several explanations. For some of the messages, he acknowledged that he sent them but explained that the messages were flirtatious and joking and were not what they looked like. [*Id.* at 8]. On the other hand, Defendant contended that the messages about birth control were not jokes, but rather were "about him trying to be like her parent and not sexual." [*Id.*]. Other overtly sexual messages were explained as messages sent accidently to the victim, or were otherwise exclusively about her relationship with another adult man and not her relationship with him. [*Id.*]. Defendant denied ever having sex with the victim. [*Id.*].

Another potential victim came to the attention of law enforcement in September of 2025. [*Id.* at 6]. A seventeen-year-old girl alleged that defendant had touched her sexually, but no further information about this allegation was available because the victim was hospitalized. [*Id.*]. The potential victim was one of the four young woman Defendant said had been coming over to his house, and he acknowledged that her father had accused him of grooming her. [*Id.* at 7].

4

**B. Defendant's Proffer**

Defendant's counsel proffered Defendant's dispute that he had a sexual relationship with any of the girls mentioned by the government in its proffer, including the minor victim. [*Id.* at 9]. Defendant is 50 years old, has been in the local community for decades, and has many years of work history as a gardener, a landscaper, and in retail. [*Id.* at 10–11]. He has a limited criminal history, which includes a misdemeanor bad check conviction in 2009 and a 2011 conviction for driving under the influence. [*Id.*]. Defendant also disputed the evidentiary basis for the history of failing to appear listed in the probation pretrial services report. [*Id.* at 11].

Defendant suggests a release plan that would involve letting him live with his sister, Sandra Grey. [*Id.* at 9-10]. Grey has a bedroom available for Defendant and has preemptively "banned" the minor victim from her home. [*Id.* at 10]. Grey is aware that the minor victim has arrived at the door unannounced multiple times in the past, and she would not allow any of the four girls to be in her home should Defendant come to live with her. [*Id.*]. Grey's home has no firearms, drugs, or alcohol. [*Id.*].

Of Defendant's eight children, only one is a minor and he is prepared to limit contact with her if needed. [*Id.* at 11]. He has the skillset, due to his

5

many years of work history, to find a different job if he is unable to return to Tulsa Public Schools. [*Id*.].

Defendant further proffered that the girls and young women who visited his home were all previously acquainted with one of his adult daughters, and that these individuals were not "random minors." [*Id*. at 12]. Defendant also proffered that he spends his time visiting his stepfather in the nursing home and working. [*Id*.]. However, if the Court determines that Defendant cannot live on his own, he is prepared to live with his sister and accept restrictions including location and internet monitoring. [*Id*.].

## C. The Pretrial Services Report

Defendant also proffered from the pretrial services report ("PTSR") prepared by the U.S. Probation Office. [*Id*. at 11]. The information in the PTSR was unverified because Defendant could not or did not provide a collateral contact. [PTSR at 1]. The report therefore represents information self-reported by Defendant, information provided by the case agent, and information the assigned Probation Officer could discern from public reports.

Defendant reports that he has lived in Oklahoma for 33 years and has been with the same employer for 15 years. [*Id*. at 1]. He reports an unremarkable medical history, and a depression diagnosis from July of 2025. [*Id*. at 3]. He is married to Felicia Griffith, though the two have been

separated "for some time." [*Id*. at 2]. Defendant reports having six minor children and two adult children. [*Id*.]. He maintains contact with four of his children, his sister, and his stepfather. [*Id*.].

The report indicates that Defendant has one prior conviction for DUI, a prior conviction for issuing a bad check, and one failure to appear. [*Id*. at 4, 6]. He denied any history of substance abuse, despite the prior DUI conviction. [*Id*. at 4]. The alleged victim in this case lives approximately one mile from the Defendant, and the victim was at the Defendant's home when he was arrested. [*Id*. at 3.]. Ultimately, the Probation Office recommended a finding that no condition or combination of conditions would reasonably assure the safety of the community. [PTSR at 4].

### D. Judge Little's Order

After hearing the proffers and arguments from both parties, Judge Little ordered that Defendant be detained pending trial. In discussing her ruling during the detention hearing, Judge Little observed the application of the presumption, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community because one of the offenses with which defendant is charged under is 18 U.S.C. § 2422(b). [ECF No. 23 at 20].

Judge Little stated that Defendant was able to rebut that presumption by demonstrating that he would have a place to live and is employable. [*Id*. at 20–21]. Considering the presumption, the information in the pre-trial service report, the indictment, and the proffers, she nonetheless found by clear and convincing evidence that no conditions of release would reasonably assure the safety of others. [*Id*. at 21].

Judge Little found that the first two factors under Section 3142(g) including nature and circumstances of the offense charged, which involved a minor victim, and the strength of the evidence, which included the Snapchat messages entered into the record by the government, favored detention. [*Id*.]. She found that the third factor, the history and characteristics of the person, generally favored release because Defendant was employable, had strong family support, and had a minimal dated criminal history. [*Id*. at 21–22]. Judge Little noted, however, that Defendant had somehow become an adult figure to several teenage girls, and that one of those girls spent the night at his house. [*Id*.].

Judge Little also considered the nature and seriousness of the danger to any person or the community that Defendant might pose if released. [*Id*.]. She identified several facts that pushed this factor in favor of detention. First, Defendant seemed to be serving as some kind of adult figure to

multiple teenage girls. [*Id*.]. Second, both Defendant's own home and his sister's home are near the alleged victim's home and near schools, day cares, and churches. [*Id*.]. And finally, when Defendant was arrested, the minor victim was at his home. [*Id*.]. This creates potential for continuing sexual activity with minors, which weighed in favor of detention. [*Id*.].

Upon analysis of each factor under 18 U.S.C. § 3142(g), Judge Little ordered the Defendant detained.

## II. Applicable Standard

"If a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court's review of a magistrate judge's detention order is *de novo*; thus, it must make "an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

Under the Bail Reform Act, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Specifically, the government must prove risk of flight by a preponderance of the evidence, and danger to any other

person or the community by clear and convincing evidence. *Cisneros*, 328

F.3d at 616 (citations omitted).

To determine whether there are conditions that would "reasonably assure

the appearance of the [defendant] as required and the safety of any other

person and the community[,]" the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[A]pplying and weighing the relative importance of the

statutory factors requires an individualized determination that necessarily

differs for each defendant depending on the circumstances of the case."
*United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec.
30, 2021).[1]

    If the Court finds probable cause to believe the defendant committed one
of the offenses listed at 18 U.S.C. § 3142(e)(3), then it is presumed—subject to
rebuttal—"that no condition or combination of conditions will reasonably
assure the appearance of the person as required and the safety of the
community[.]" 18 U.S.C. § 3142(e)(3). "An offense involving a minor victim
under section … 2422" is an offense listed at 18 U.S.C. § 3142(e)(3)(E). "Once
the presumption is invoked, the burden of production shifts to the defendant."
*United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). Although the
defendant must produce some evidence to rebut the presumption, the
government always bears the ultimate burden of persuasion. *Id.* at 1354–55.

## III. Analysis

    Based upon its independent, *de novo*, review of the record, the Court
concludes that the government has shown clear and convincing evidence that
there are no conditions, or combination of conditions, that will reasonably
assure the safety of any other person and the community if Defendant were
released on pretrial conditions.

---

[1] Unpublished Tenth Circuit opinions are not binding precedent but may be cited for
their persuasive value. *See* Fed. R. App. P. 32.1.

Based on review of the indictment, the Court concludes that probable cause exists that the defendant committed an offense involving a minor victim under § 2422(b). *See United States v. Silva*, 7 F.3d 1046 (10th Cir. 1993) (table) ("The grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal … offense[.]"). The presumption is subject to rebuttal. Here, Defendant has proffered, and the PTSR supports, that Defendant is employable and has a place to live. That is sufficient to rebut the presumption. However, as Judge Little observed, even if a defendant's burden of production is met, the presumption remains a factor for consideration in determining whether to detain. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

## A. The Nature and Circumstances of the Charged Offenses

Defendant is charged with sexual offenses against a minor, including Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b) and Sexual Abuse of a Minor in Indian Country in violation of 18 U.S.C. § 1151, 1153 and 2243(a). [ECF No. 2]. The Indictment alleges that Defendant knowingly engaged in and attempted to engage in a sexual act with a child between the ages of twelve and fifteen years old. [*Id.*]. Defendant is 50 years old, and victim alleges that the two engaged in sex multiple times beginning

12

in the spring or early summer of 2025. [ECF No. 23 at 5, 10]. This factor weighs in favor of detention.

## B. The Weight of the Evidence

The second factor also favors detention. The victim's account of the sexual acts with Defendant is supported by Snapchat messages recovered from the minor victim's phone. [ECF Nos. 23 at 5; 24 at 3 n.1; 24-1; and 24-3].

## C. The History and Characteristics of the Defendant

Defendant's history and characteristics are mixed. As Judge Little observed, Defendant is employable, has a minimal and aged criminal history, a stable work history, and strong family support. [ECF No. 23 at 21–22]. His sister is prepared to permit Defendant to live in her home if he is released. [*Id*.]. However, Defendant appears to have forged a relationship with multiple teenage girls who were permitted to be at his home. [*Id*. at 7]. At least one of these girls was permitted to stay at his home overnight even after the police had warned him not to open the door for her. [*Id*. at 7–8]. At the very least, and although Defendant did not ignore a court order, this behavior evinces a willingness to flout directions from law enforcement and ignore common sense.

Considering all the facts and circumstances, the Court finds this factor favors detention.

### D. Nature and Seriousness of the Danger to any other Person or the Community if Defendant is Released

The government contends that Defendant has had sexual encounters with multiple minors. [ECF No. 23 at 6–7, 14]. Defendant has also developed relationships with several other minors. [*Id.* at 7]. For his part, Defendant contends that his relationship with these girls was not sexual. [*Id.* at 9]. Defendant would pose little danger to the community, he appears to argue, because he did not recruit these young women but met them through his daughter. [*Id.* at 11–12].

There are two factors that are decisive here. First, Defendant has demonstrated an inability to exercise discretion where the minor victim is involved. Whether or not Defendant felt obligated to follow the directive of police, his decision to permit the minor victim to stay overnight at his house shows a willingness to risk arrest rather than turn the victim away. There is little reason to think that the risk of arrest would deter him in the future.

That concern would be irrelevant if Defendant posed no danger to the victim. However, the allegations of the victim, particularly when combined with the Snapchat messages, do show that Defendant represents a danger to the safety of any other person and the community. Sexual crimes against children are serious and frequently involve an adult or authority figure encouraging a minor to participate in harmful acts to which they cannot

14

consent. The victim's ability to protect herself is impaired by both her minority, the Defendant's alleged actions, and the "father figure" relationship that Defendant purports to have with the minors. [ECF No. 23 at 12]. The Court is not persuaded that any condition would lessen the danger he represents to the minor victim, the other minors identified during the detention hearing, and the community. This factor weighs in favor of detention.

All factors taken as a whole, the Court finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

## Conclusion

Having conducted a *de novo* review, the Court finds that the government has proven that no release conditions or combinations of conditions would assure the safety of any other person and the community. Therefore, Defendant will remain detained pending trial.

IT IS THEREFORE ORDERED that Defendant's Motion to Revoke Detention Order [ECF No. 21] is DENIED.

DATED this 9th day of February, 2026.

_____
Sara E. Hill
UNITED STATES DISTRICT JUDGE